## BRADLEY and others *v.* DULL and others.

*(Circuit Court, W. D. Pennsylvania.* March 24, 1884.)

1. PATENTS FOR INVENTIONS—DEATH OF PATENTEE—TITLE VESTS IN ADMINISTRATOR.

     Under the act of July 8, 1870, and the Revised Statutes, upon the death of a patentee intestate, the title to the patent vests in his administrator, and not in his heirs.

2. SAME—CONSTRUCTION OF PATENT.

     In the interpretation of a patent, the court, proceeding in a liberal spirit, should sustain the construction claimed by the patentee himself, if this can be done consistently with the language he has employed.

3. SAME—PATENT No. 121,746—INFRINGEMENT.

     Letters patent No. 121,746, for an apparatus for drying sand and gravel, granted to Allen H. Bauman, December 12, 1871, construed, and the defendants *held* to infringe.

In Equity.

*Bakewell & Kerr,* for complainants.

*George H. Christy,* for defendants.

ACHESON, J. The grounds of defense are—*First,* that the plaintiffs have not shown title to the patent sued on; and, *secondly,* that there has been no infringement by the defendants.

1. The patent was granted on December 12, 1871, to Allen H. Bauman. He subsequently died intestate, and letters of administration upon his estate were duly issued to Reuben F. Bauman, who as administrator sold and assigned the patent to the plaintiffs. The defendants controvert the title thus acquired, maintaining that upon the death of the patentee, intestate, the patent became vested in his heirs, and therefore that the administrator was without authority to make sale and assignment thereof. The argument is based on the change in the patent law made by the twenty-second section of the act of July 8, 1870, (reproduced in section 4884 of the Revised Statutes,) whereby it is enacted that the patent shall contain "a grant to the patentee, his *heirs* or assigns," the previous legislation having provided for a grant to the patentee, his heirs, *administrators, executors,* or assigns. This change, in connection with some other provisions of the existing law, it is contended indicates an intention on the part of congress to secure the benefits of the invention to the heirs of the deceased patentee, in case of intestacy, to the exclusion of the administrator. An impressive argument was made by counsel in support of this view. But the contrary has just been decided in the first circuit in the case of *Shaw Relief Valve Co.* v. *City of New Bedford,* 19 FED. REP. 753, in which was involved the identical question now before me. To the able opinion of Judge LOWELL in that case I can add nothing. Adopting his conclusion I must overrule this defense.

2. Whether or not the defendants infringe depends on the construction to be given to the claim. The subject-matter of the patent is a

v.19,no.13—58

machine for drying sand and gravel. The invention (so the specification declares) relates to the combination of iron or metal pipe or pipes, so constructed and arranged in parallel and longitudinal lines as to form a surface upon which the wet sand or gravel is placed to be dried by the application of fire or steam. The surface formed by the pipe or pipes forms the bottom of a box or frame which contains the wet sand or gravel. The pipe or pipes throughout the whole surface are heated by fire or steam passing through them, so as to dry the sand or gravel, which, when dried, slips and passes through the openings or spaces between the lines of pipe, the wet sand or gravel in the box or frame above drying gradually and passing through, ready for shipment and use. "AA is the box or frame in which the wet sand or gravel is placed preparatory to being dried. The bottom of this box or frame is formed by the sets of pipes shown by cc, etc. On the surface formed by these pipes the wet sand or gravel rests and adheres until it becomes dried, when it passes through the openings or spaces between the pipes." If fire is used, the pipes are heated from a fire-chamber at one end, the fire, heat, and smoke passing through the pipes into flues at the other end; but the arrangement described for heating the pipes is somewhat different when steam is employed.

In the body of the specification occurs the following passage:

"Immediately underneath the whole of the surface formed by the pipes is placed a wire sieve, FF, to prevent the sand or gravel from passing too rapidly through the spaces or openings between the pipes, and before the same is sufficiently dried; the sieve so used to be coarse or fine, according as the sand or gravel is coarse or fine."

There is but a single claim, which is in these words:

"The apparatus herein described for drying gravel or sand, consisting of the fire-chamber, flues, heating pipes, and case, all constructed and arranged substantially as set forth."

The word "case" does not appear in the descriptive part of the specification, and is used in the claim only. What does the term comprehend? The defendants insist that it includes the sieve, FF, as an essential constituent; and as they do not use a sieve or any substitute therefor, it is contended that they do not infringe. Webster defines "case" to be "a covering, box, or sheath; that which incloses or contains." Now, turning to the specification we discover that AA is a "box or frame" in which the wet sand or gravel is placed to be dried. What constitutes the bottom of this box? Is it the sieve? Certainly not, if the specification is to furnish the answer; for it distinctly asserts, not once only, but twice, that the bottom of the box or frame, AA, is composed of sets of pipes so constructed as to form a surface upon which the wet sand or gravel rests during the drying process. We have, therefore, the "case" complete in all its parts without the aid of the sieve, FF. In fact, it is not an essential part of the machine, for without its co-operation the apparatus successfully performs

its contemplated work. The truth seems to be that the sieve, under certain conditions, may be a serviceable addition to the machine, but is not an indispensable part. And as it is not mentioned in the claim, and is not necessary either to constitute the "case" or to the successful working of the apparatus, it would seem to be a fair conclusion that is not an element of the patented combination. This view but conforms to the spirit of the rule for the interpretation of patents authoritatively declared in *Klein* v. *Russell*, 19 Wall. 466, where it is said:

"The court should proceed in a liberal spirit, so as to sustain the patent and the construction claimed by the patentee himself, if this can be done consistently with the language he has employed."

Let a decree be entered in favor of the plaintiffs.